**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **POWER-ONE, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 2:05cv463 |
| vs. | § | |
| | § | |
| **ARTESYN TECHNOLOGIES, INC.,** | § | |
| **and SILICON LABORATORIES, INC.** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Power-One, Inc.'s ("Power-One") Motion to Compel Production of Documents Withheld on the Basis of an Alleged Common Interest (Docket No. 149).  Having considered the motion and Defendant Artesyn Technologies, Inc.'s ("Artesyn") response, the Court finds that Power-One's motion should be **DENIED**.

### BACKGROUND AND CONTENTIONS
### OF THE PARTIES

In April of 2005, Ken Blake, the President of Artesyn's Marketing and Standard Product Division, contacted a number of companies in the power supply field to discuss a pending Power-One patent application entitled "System and Method for Controlling Output Timing Parameters of Power Converters."  After a period of negotiation, a number of power supply companies entered into a "Common Interests Agreement" ("the agreement").  In relevant part, Paragraph 2 of the agreement provides:

> 2. The Parties to this Agreement are jointly involved in developing an open-standard digital power management protocol (referred to herein as the "Standard Digital PM Protocol").  In that connection, the Parties have a joint interest in developing a standard or standards which enable open architectures for power systems control that will facilitate product development and, in so doing, have a joint interest in

> evaluating (i) patents, (ii) published patent applications, (iii) other intellectual property, (iv) prior art and similar materials/information that could provide a legal hindrance to the development or practice of the Standard Digital PM Protocol.

Ex. 1 to Artesyn's Resp.

Paragraph 5 states:

> 5. The Parties have concluded that they have the common interests relating to the evaluation of alleged intellectual property that could provide a legal hindrance to the development or practice of Standard Digital PM Protocol. The facts and information known or developed by each of them, as well as by other future Parties, may assist each Party in pursuing their common interests. The Parties therefore acknowledge and agree that their interests will best be served if the Parties and their Counsel can exchange information subject to the continued protection of the attorney-client, attorney work product, and other privileges. Accordingly, "common interests group" or, brevity, "Members," for purposes of this Agreement shall mean all Parties and their Counsel who are signatories to this Agreement.

*Id.*

Artesyn claims that documents concerning this "common interest legal group" are protected from disclosure by the attorney-client privilege and the common legal interest doctrine. According to Artesyn, the common legal interest the parties shared was the validity of Power-One's patent application that led to the patents-in-suit. Power-One contends that while the parties to this agreement may have had a common business interest in negating Power-One's patents in this field, they did not have a common legal interest. Thus, Power-One argues that the attorney-client privilege was waived when the documents at issue were shared with third parties.[1] The documents at issue have been submitted to the Court for *in camera* inspection.

## APPLICABLE LAW

In this circuit, the common legal interest doctrine protects two types of communications in

---

[1] Aside from arguing that the documents at issue are business rather than legal communications, Power-One does not appear to challenge the applicability of the other elements of the attorney-client privilege. As will be explained below, the Court concludes that the communications are of a legal nature.

civil litigation: (1) communications between co-defendants in actual litigation and their counsel and (2) communications between potential co-defendants and their counsel. *See In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001); *Ferko v. NASCAR, Inc.*, 219 F.R.D. 403, 405-6 (E.D. Tex. 2003). With regard to the latter category, the Fifth Circuit appears to generally require a "palpable threat of litigation at the time of the communication." *In re Santa Fe*, 272 F.3d at 710. A party asserting a privilege has the burden of demonstrating its applicability.[2] FED. R. CIV. P. 26(b)(5). Because privileges in general and this doctrine in particular are "an obstacle[s] to truth seeking," they must "be construed narrowly to effectuate necessary consultation between legal advisers and clients." *In re Santa Fe*, 272 F.3d at 710 (citations omitted).

## ANALYSIS

Power-One argues that Artesyn has failed to demonstrate that the third parties with whom the documents were shared were engaging in or planning to engage in activities that could infringe Power-One's patents. The Court disagrees. The agreement itself shows that the signatories were engaging in activities that could potentially result in litigation.[3] Paragraph two of the agreement provides that the parties were jointly involved in developing a protocol which enables open architectures that facilitate product development. Ex. 1 to Artesyn's Resp. In developing this protocol, the parties expressed a "joint interest in evaluating (i) patents, (ii) published patent applications, (iii) other intellectual property, (iv) prior art and similar materials/information that could provide a legal hindrance to the development or practice of the Standard Digital PM Protocol."

---

[2] Of course, the common legal interest doctrine is not itself a privilege, but merely extends a recognized privilege, often the attorney-client privilege, to communications with parties with a common legal interest. *See Power Mosfet Technologies v. Siemens AG*, 206 F.R.D. 422, 424 (E.D. Tex. 2000).

[3] The Court recognizes that a common interest agreement cannot create a common interest. Here, however, the agreement is indicative of the common interest the parties had in evaluating Power-One's patent application in light of the shared technology the parties were developing.

*Id*. Paragraph five describes the parties' common interests "relating to the evaluation of alleged intellectual property that could provide a legal hindrance to the development or practice of Standard Digital PM Protocol" and that "facts and information known or developed by each of them . . . may assist each Party in pursuing their common interests." For that reason, the parties acknowledged and agreed "that their interests will best be served if the Parties and their Counsel can exchange information subject to the continued protection of the attorney-client, attorney work-product, and other privileges."

In its Reply, Power-One contends that Artesyn has not shown that each of the third party signatories was contemplating a product that could infringe, but acknowledges that certain products that implement the protocol referenced in paragraph two of the agreement could infringe Power-One's patents. The Court is not persuaded that in order for there to be a "palpable threat" of litigation, each third party must necessarily contemplate a specific product that could infringe. Significantly, Power-One does not cite to any authority that so holds. In the Court's view, what is important is the parties' joint effort to develop a shared protocol for the facilitation of product development. *Cf. Power Mosfet Technologies,* 206 F.R.D. at 425-26 (holding that the defendants had a common interest in patent invalidity but no common interest in infringement analysis because, in part, *there was no evidence of a coordinated effort to produce shared technology*). The agreement itself and the documents submitted for *in camera* inspection show that the signatories were concerned about Power-One's impending patents, their effect on the jointly developed protocol and the parties' legal exposure when Power-One's patents issued. While the Court recognizes that the common legal interest doctrine should be construed narrowly, the Court concludes, under these facts, that to require Artesyn to produce documents related to this group's evaluation of Power-One's patent application and its legal effect on jointly developed technology would significantly undermine

the attorney-client privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (The purpose of the privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.").

## CONCLUSION

For the forgoing reasons, the Court **DENIES** Power-One's motion.

**So ORDERED and SIGNED this 18th day of April, 2007.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE