# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| POWER-ONE, INC. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 2:05-CV-463 |
| | § | |
| ARTESYN TECHNOLOGIES, INC. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Plaintiff Power-One, Inc.'s Motion to Conform the Pleadings to the Evidence (Doc. No. 256); Plaintiff Power-One Inc.'s Renewed Motion for Sanctions or in the Alternative to Bifurcate Case Into Jury Trial and Bench Trial (Doc. No. 293); Defendant Artesyn's Combined Opposition to Plaintiff's Motion to Conform the Pleadings to the Evidence and Plaintiff's Renewed Motion for Sanctions or in the Alternative to Bifurcate the Case Into Jury Trial and Bench Trial (Doc. No. 278); Power-One's Motion For Additional Discovery on "Atlas" and "Venus" POL Products (Doc. No. 313); Plaintiff Power-One, Inc.'s Motion for Expedited Consideration of its Motion for Additional Discovery on "Atlas" and "Venus" POL Products (Doc. No. 314); Power-One's Motion for Leave to Supplement its Infringement Contentions (Doc. No. 298); Power-One's Reply in Support of its Motion to Amend Infringement Contentions and Identification of Additional Discovery (Doc. No. 309); Defendant Artesyn's Sur-Reply in Opposition to Power-One's Motion for Leave to Supplement its Infringement Contentions; and Defendant Artesyn's Opposition to Power-One's Motion for Additional Discovery (Doc. No. 315). For the reasons that follow, Plaintiff Power-One, Inc.'s (hereinafter "Power-One") motions are **DENIED**.

## BACKGROUND

On September 30, 2005, Power-One brought the present lawsuit against Defendant Artesyn Technologies, Inc. (hereinafter "Artesyn"), alleging that a feature set incorporated in certain Artesyn

products infringed multiple Power-One patents, including Patent No. 6,936,999, Patent No. 6,949,916, Patent No. 7,000,125, and Patent No. 7,049,798 (collectively "Power-One's patents").[1] After two years of litigation, Power-One and Artesyn are now scheduled to go to trial on the DPL20C on November 6, 2007.[2] Despite the looming trial date, Power-One has brought the present motions seeking to add more products and parties to the litigation.

When it originally brought suit, Power-One made only a general allegation of infringement. Power-One sought to target any products "that used a serial bus for control and monitoring, and specifically a control and monitoring bus called the 'PMBus™.'" (Pl.'s Renew. Mot. Sanc. 2). In addition to the general allegation of infringement, Power-One specifically targeted Artesyn's DPL20C digital point-of-load converter. According to Power-One, the DPL20C was the only named product because it is Artesyn's "only publicly-announced" digital power management compliant device that also uses the PMBus™. (Pl.'s Renew. Mot. Sanc. 2). From the beginning, Power-One's infringement case was somewhat unique in that there have not been significant sales in the marketplace of the DPL20C or other related products. As a result, very little public information exists on the extent of Artesyn's use and marketing of the products, and this lack of information led to an especially contentious discovery process.

By accusing one product and a general feature set, Power-One hoped to uncover any information on other potentially-infringing Artesyn products. However, as discovery progressed, Power-One felt increasingly dissatisfied with the extent of Artesyn's production. During the course

---

[1] Patent Nos. 6,949,916 and 7,049,798 were later dropped. The upcoming trial deals only with Patent Nos. 6,936,999 and 7,000,125.

[2] At the time the first of the present motions were filed, the trial was set for August 6, 2007.

of discovery, Power-One learned that Emerson Electric Co. (hereinafter "Emerson") purchased Artesyn in April 2006, and thereafter transferred most of Artesyn's assets and employees to Astec America, Inc. (hereinafter "Astec"), another subsidiary of Emerson. (Pl.'s Mot. Conform Pleads. Evid. 3). Power-One claims they were initially unable to gather significant information from Astec or Artesyn regarding the entities' relationship and any potentially-infringing Artesyn products associated with the companies. In an effort to gather this information from all relevant sources, Power-One turned to means outside the discovery process, including hiring a private investigator to track down former Artesyn employees. (Pl.'s Mot. Renew. Sanc. 2-3). Through discussions with former Artesyn employees, Power-One uncovered information on a number of other Artesyn products similar to the DPL20C, including the Atlas, Venus, Sun Batoka and DPL15E (hereinafter "related products"). (Pl.'s Mot. Renew. Sanc. 2). After learning of these products, Power-One requested specific information regarding the products from Artesyn and Astec, yet it again felt that Artesyn was not cooperating with their discovery requests, and therefore Power-One filed a second motion to compel discovery on May 7, 2007 on these related products.[3]

By the time Power-One filed their second motion to compel, the parties were already deep in the litigation process. The deadline to join additional parties and to disclose asserted claims and preliminary infringement contentions without leave of Court was February 28, 2006. The parties were already post-*Markman* hearing[4] when they moved the Court to amend the Docket Control Order on February 8, 2007 (Doc. No. 131), which the Court granted (Doc. No. 133). The amended docket

---

[3]Power-One previously brought a motion to compel on February 20, 2007 (Doc. No. 135), and the Court held a hearing on this first motion to compel on March 22, 2007 (Doc. No. 157), and granted in part and denied in part Power-One's motion to compel in an order issued March 23, 2007 (Doc. No. 156).

[4]The Court held the *Markman* hearing on January 16, 2007, and the *Markman* opinion was issued on March 22, 2007.

control order set the deadline for expert witness reports and the designation of expert witnesses on April 20, 2007. (Doc. No. 133). The discovery deadline and dispositive motion deadline were both on May 25, 2007.[5] Pleadings were to be amended by June 8, 2007. All of these deadlines were set with the original trial date in mind, which was August 6, 2007. (Doc. No. 133). With these deadlines looming or already passed, the Court held a hearing on Power-One's motion to compel on June 25, 2007.

At the hearing, the Court granted Power-One's requests for extended discovery on the related products. Artesyn and Astec (which was subpoenaed) were both ordered to comply with discovery on the related products. Despite the extended discovery, Power-One remained convinced that both Artesyn and Astec were withholding information on the DPL20C and related products. (Pl.'s Renew. Mot. Sanc. 2-3). On July 24, 2007, two weeks before the scheduled trial date, Power-One filed the first of the present motions seeking to add Astec and Emerson as parties to the litigation. After the trial date was moved to November 2007, Power-One moved the Court to add the four new products to the litigation as a discovery sanction for the first time in a motion on August 13, 2007. Despite extended discovery and the motions seeking to add the other products as a sanction, Power-One continues to note they know very little about the products and whether they infringe, and they are still trying to determine if they can even create an infringement case on these products. (Pl.'s Renew. Mot. Sanc. 15).

Nonetheless, Power-One bases their request for sanctions on what they allege to be extensive discovery abuse by Artesyn and Astec. First, Power-One claims that Artesyn produced information on the related products only after Power-One first uncovered the evidence of these new products'

---

[5] The Court held a hearing on the dispositive motions on July 11, 2007.

features and history, and that even when Artesyn did produce the information, it ultimately did so largely after the close of discovery. (Pl.'s Renew. Mot. Sanc. 3). In addition, Power-One has offered a number of specific examples of Artesyn's discovery abuses. Regarding one of the new products Power-One uncovered and now seeks to add to the litigation, the DPL15E, Power-One offers the following example:

> "In response to Power-One's discovery requests, Artesyn specifically mentioned development work for a DPL15E product, but stated that it was never built and was abandoned before the Power-One patents issued. After moving to compel and after tracking down former Artesyn employees using a private investigator ..., Power-One learned that the DPL15E project continued and that DPL15Es were in fact built and tested. Power-One to this day has not received complete discovery concerning the DPL15E devices and related activities. Artesyn represented in its Interrogatory Responses that the DPL15E project ended before the patents issued in August."

(Pl.'s Renew. Mot. Sanc. 2-3). In addition to the allegations of multiple discovery violations, Power-One also claims that Artesyn and Astec continue to engage in a "shell game," whereby the two entities are trying to hide information on the potentially-infringing related products. As Power-One learned more about Artesyn's business relationships with Astec and Emerson, it felt that Artesyn and Astec were actually one indistinguishable entity masquerading as two entities, and that ultimately, Emerson and Astec are the actual parties in suit. Artesyn responded that after Emerson bought the company, Artseyn remained independent, and was organized for marketing purpose under the "Emerson Network Products" brand of companies and products. (Sung Decl. ¶ 7). The Emerson Network Power website continued to list Artesyn and Astec as separate and independent companies under the sub-brand "Embedded Power." (Kubly Decl. ¶ 12). Artesyn continues to assert that it remains a legally separate Florida corporation, and that there is no direct legal relationship between

Artesyn and Astec. (Kubly Decl. ¶ 7). Finally, Artesyn claims that Astec and Artesyn have separate officers, and that Artesyn remains a valid and legal entity that "maintains possession of its intangible assets." (Sung Decl. ¶¶ 13-15).

Despite Artesyn's assertions, Power-One remains unconvinced. As evidence of the alleged indistinguishable union of the two entities, Power-One provides the following:

> "Artesyn Technologies, Inc. was originally an independent public corporation headquartered in Florida. In 2006, Artesyn was acquired by Emerson and became a wholly owned subsidiary of Emerson. Over the past year, Artesyn became less and less independent to the point now where Artesyn—as a stand alone entity—has ceased to exist. Although there is still a corporate entity registered in the state of Florida called "Artesyn Technologies, Inc.," it is no longer headquartered in Florida. Records from the Department of Corporations for the State of Florida reveal that as of May, 2007 the headquarters of "Artesyn Technologies, Inc." is 5810 Van Allen Way, Carlsbad, CA 92008. This address is the headquarters for Astec. Power-One suspects that the Florida corporation "Artesyn Technologies, Inc." has no employees and that all engineering, manufacturing, and sales is handled through Astec or the new division of Emerson Network Power called "Astec/Artesyn.""

(Pl.'s Renew. Mot. Sanc. 6). Power-One also claims that employees being used as witnesses have been instructed to say they work for "Astec/Artesyn," that Artesyn and Astec's in-house counsel are the same person, and that the documents produced by Astec and Artesyn came from the same source. (Pl.'s Renew. Mot. Sanc. 6). Power-One brings the present motions seeking to amend the pleadings to reflect its belief that they are actually litigating against not only Artesyn, but Emerson and Astec as well.

As a complicating factor to the determination of the entities' relationship and the disposition of the present motions, on July 27, 2007, Astec filed suit in the Central District of California seeking

a declaration of invalidity and non-infringement of the same patents-in-suit at issue in the present litigation. As of October 4, 2007, Astec's case, *Astec America, Inc. v. Power-One Inc.*, No. 6:07-cv-464, has been transferred to the Eastern District of Texas "for the convenience of the parties." Power-One claims that Astec and Artesyn's "shell game" has forced Power-One to subpoena Astec for information on other potentially-infringing Artesyn products and litigate on multiple fronts, while Artesyn hid behind its relationship with Astec throughout discovery, all the while failing to produce the information sought by Power-One. Power-One offers the following example as part of the Artesyn and Astec "shell game" and discovery abuses:

> "The Court Ordered Astec (or ordered Artesyn to ensure Astec compliance, however one wishes to slice it) to produce responsive documents by July 10. Artesyn's attorneys produced the Astec production on July 10 and it contained 200 pages of documents. Two days ago, on July 25 (15 days after the Court Ordered deadline), Power-One received a CD from Artesyn's attorneys containing 9,441 pages of additional "Astec" materials. Artesyn's counsel provided no warning that more documents were coming and Power-One still doesn't know if the production is complete."

(Pl.'s Renew. Mot. Sanc. 5). Now, with trial looming on November 6, 2007, Power-One wants to amend the pleadings to include Astec and Emerson as parties to the suit, and also add the Atlas, Venus, DPL15E, and Sun Batoka as accused products to the litigation despite the lack of information regarding whether Power-One can make a viable infringement case for the products. In response, Artesyn retorts that throughout Power-One's numerous amended complaints and assertion of its infringement contentions, Power-One only alleged that the Artesyn DPL20C converter infringed the asserted patents, not the other products. Artesyn claims Power-One had more than sufficient information to seek to amend its pleadings and infringement contentions to include Astec and/or

7

Emerson and the new devices well before the June 8, 2007 deadline to amend, and that Power-One is using the present motions as an abusive end-run around the Federal Rules of Civil Procedure and the other parties due process rights. As an example of the extent of Power-One's knowledge of the existence of the related products, Artesyn claims that Power-One knew of the DPL15E's existence on August 3, 2006, and that Artesyn produced 68 documents concerning the product prior to April 8, 2007. In addition to the DPL15E, Artesyn alleges that Power-One was on notice of the existence on the Atlas and Venus devices in August of 2006, and had documents on each product by April 2007, and yet they did not seek to amend their infringement contentions, and waited until August 13, 2007 to file a motion with the Court requesting that these products be added to the case.

## ANALYSIS

Power-One has filed multiple motions in various forms seeking to add the two additional parties and four additional products to the ongoing litigation. The Court will address two of the more substantive motions in depth, as the disposition of these motions largely renders the remaining motions moot. The first motion, titled "Motion to Conform the Pleadings to the Evidence," seeks to add Emerson and Astec pursuant to Rule 15(b) of the Federal Rules of Civil Procedure. Power-One's second motion seeks to add four new products to the litigation as a discovery sanction. Both motions are addressed individually below.

*Motion to Conform the Pleadings to the Evidence*

In its first motion, Power-One seeks to amend its pleadings to bring Astec and Emerson into the suit pursuant to Rule 15(b) of the Federal Rules of Civil Procedure. By utilizing Rule 15(b), Power-One is operating under the assumption that Artesyn and Astec are in fact one in the same, not two separate entities. However, Artesyn claims that while it may be a wholly owned subsidiary of

Emerson, it remains a separate legal entity from Astec and Emerson, and that each company controls its own assets. Given all of the information before the Court, the Court finds that utilizing Rule 15(b) to add Astec and Emerson to the suit is improper for a number of reasons, as discussed below.

The Federal Rules of Civil Procedure allow parties to amend pleadings to conform with the evidence, even after judgment, in certain circumstances. Rule 15(b) provides that, "when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." FED. R. CIV. P. 15(b). While Rule 15(b) does permit amendment of the pleadings to bring them in line with the evidence adduced *at trial*, by the reading of the Rule's language, the pleadings may not be amended without the *express or implied consent* of the parties. *Int'l Harvester Credit Corp. v. East Coast Truck and R.V. Sales, Inc.*, 547 F.2d 888, 890 (5th Cir. 1977) (emphasis added). Whether an issue has been tried with the implied consent of the parties "depends upon whether the parties recognized that the issue entered the case at trial, whether the evidence supporting the issue was introduced at trial without objection, and whether a finding of trial by consent would prejudice the opposing party." *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004). *See also Coppedge v. K.B.I., Inc.*, 2007 WL 1791717 at *5 (E.D. Tex. 2007) ("In determining implied consent, the Court should consider whether the party has had a fair opportunity to defend against the claim and would be prejudiced in presenting its own case").

The principal purpose of Rule 15(b) is judicial economy. *Deere & Co. v. Johnson*, 271 F.3d 613, 621 (5th Cir. 2001). When the necessary elements of the Rule are present, amending the pleadings saves judicial resources and avoids the necessity of a new trial. *Johnson*, 271 F.3d at 621-22 n.7 (citing 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1491 (2d ed. 1990)). However, "saving resources usually takes a back

seat to procedural due process." *Johnson*, 271 F.3d at 622. Therefore, in the absence of express consent, "trial of unpled issues by implied consent is not lightly to be inferred under Rule 15(b), and such inferences are to be viewed on a case-by-case basis and in the light of the notice demands of procedural due process." *Id.*; *Triad Elec. & Controls, Inc. v. Power Sys. Eng'g, Inc.*, 117 F.3d 180, 193-94 (5th Cir. 1997). Each party is entitled to know what is being tried, or at least have the means to find out. *Jimenez v. Tuna Vessel Granada*, 652 F.2d 415, 420 (5th Cir. 1981) (noting that notice is a critical element of procedural due process, and denial of procedural due process is tantamount to "trial by ambush"). Therefore, while it is true that amendments should be freely granted, the party charged should still be given an opportunity to fully respond to defend against the theories presented, and courts must be ever aware of the due process rights of the parties. *Morgan and Culpepper, Inc. v. Occupational Safety and Health Review Comm'n*, 676 F.2d 1065, 1068 (5th Cir. 1982) (noting that it is improper to prejudge possible defenses which a party may assert, and that parties should have a full opportunity to present any and all possible defenses). In civil cases, due process requires proper notice, service of process, and a court of competent jurisdiction. *Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d 204, 210 (5th Cir. 2003).

As a preliminary matter, the Court cannot accept the assertion that Artesyn is an indistinguishable entity from Astec and Emerson. Despite Power-One's assertions to the contrary, the Court finds that Artesyn has presented ample evidence that it remains a legally separate entity, and would be fully subject to any judgment that might be rendered. With the finding that the entities all remain distinct and separate, the Court cannot grant Power-One's Rule 15(b) motion.

Applying Rule 15(b) in the manner in which Power-One asks the Court to apply it would violate Astec and Emerson's procedural due process right to service of process. At the time Power-

One brought the present motion, Power-One and Artesyn were set to go to trial in approximately a month. While the trial has since been moved, even adding Astec and Emerson now would add new defendants in a litigation process that has closed discovery and is set to proceed to trial in November 2007. Adding Astec and Emerson would mean either denying both entities their opportunities to be served proper process, answer the complaint, raise defenses, file motions, and participate in discovery, or the Court would have to start the entire process over again to guarantee the parties' due process rights. While judicial economy might be served by avoiding a separate trial involving Astec and Emerson and the products they are involved with, Rule 15(b) is not meant to be applied in the manner which Power-One seeks to use it. A plain reading of Rule 15(b), in conjunction with review of the case law interpreting the Rule, indicates that the Rule is meant to be limited to amending pleadings only when "issues not raised by the pleadings are tried by express or implied consent of the parties." Adding Emerson and Astec means adding *parties*, not issues. On top of violating Astec and Emerson's due process right to service of process, adding both entities *before trial* would be procedurally improper under Rule 15(b) since the Court would not be amending the pleadings to reflect *issues* that had been *tried*. Finally, there is no indication that Astec or Emerson gave any sort of implied consent to participate in these proceedings. While it is true that Astec filed a separate lawsuit that has been transferred to this Court, neither Astec nor Emerson had previously filed any pleadings or documents with the Court in the present litigation, and neither has made an appearance such that it would imply they are somehow consenting to participation in the present litigation.[6]

In support of its proposed application of Rule 15(b), Power-One cites a case issued this year

---

[6]If Power-One ultimately obtains a judgment against Artesyn, the question becomes a scope of injunction issue regarding whether or not Astec or Emerson would also be bound by a judgment against Artesyn, and the scope of injunctive relief can be determined if necessary should the jury return of a verdict of infringement.

from another division within the Eastern District of Texas. In that case, the Court noted that "pleadings may be amended to add parties in very late stages of the litigation, even after trial, but only when there is no denial of due process by doing." *Coppedge v. K.B.I., Inc.*, 2007 WL 1791717 at *4 (E.D. Tex. 2007) (unpublished). Power-One bases virtually their entire Rule 15(b) argument upon one cropped section of the *Coppedge* opinion:

> "[U]nder Rule 15(b), late amendment is proper when the court determines that, even though a party was not formally named in the pleadings, the claims asserted by or against it were known to all parties, including the absent party, and actually litigated. [...] This is because in such a situation, the unnamed party is put on full notice of the claims against it and its due process rights are protected, having been given meaningful opportunity to dispute that claim. [...] The Court may, therefore, infer the party's implied consent to the amendment of the claims against the party."

*Id.* at *5. While the language of the cropped quote in conjunction with Power-One's assertion that Astec and Artesyn are actually one conjoined entity within Emerson would seem to favor application of Rule 15(b) in the manner in which Power-One seeks to apply it, the quote above does not paint a complete picture of either the *Coppedge* court's analysis or Rule 15(b) jurisprudence.

In *Coppedge*, the entity which was ultimately added late pursuant to Rule 15(b) (the company was named "Sabatti") was not named in the original complaint. The plaintiff timely moved to amend the complaint and add Sabatti as a named defendant. The Court granted leave to amend, but the plaintiff never actually filed the amended complaint reflecting Sabatti's addition as a defendant. Sabatti thereafter appeared before the court and filed a motion to dismiss for lack of jurisdiction, which the court dismissed. Almost one year later, Sabatti filed another motion to dismiss claiming it had not been named as a defendant in the complaint that was actually filed and active before the

court, and therefore was not a proper defendant in the case. The Court noted that while the live complaint did not reflect Sabatti's addition as a defendant, Sabatti was actually added as a party by the Clerk of Court after the judge's ruling granting the amendment to add Sabatti as a defendant.. Sabatti thereafter received notice of all entries in the case, had been properly served process, and the court therefore found that Sabatti was put on notice of the claims against it. Based on that notice and the active participation in the litigation, the *Coppedge* court found no due process violation, and ultimately ruled that Sabatti was a party to the case by implied consent. The *Coppedge* court also noted that the entire basis for Sabatti's filing was nothing more than an inadvertent filing error, and the "interests of justice" demanded that Sabatti not be excused on such an inadvertent error.

Power-One's reliance on *Coppedge* is misplaced, and the case is distinguishable from the present circumstances. The *Coppedge* court noted that its application of Rule 15(b) would not be proper if it violated the due process rights of the parties to be added. Hence, *Coppedge* does not apply, since adding Astec and Emerson to the litigation now would either violate their procedural due process right to service of process, or defeat the "judicial economy" purpose of the rule by forcing the Court to move the scheduled trial date, allow for service of process, and reopen the entire litigation process.

In addition to the seeming inapplicability of Rule 15(b), the Court also notes that Power-One may have unduly delayed bringing the present motions, and even if it did not unduly delay, granting Power-One's motion would result in undue prejudice to Artesyn, Astec, and Emerson. Undue prejudice and undue delay are two of the five considerations Fifth Circuit courts examine in determining whether to grant a party leave to amend. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (applying undue prejudice and delay factors as weight toward denying Rule 15(b)

motion). Leave to amend should be freely given only in the absence of these factors. *Id.* Artesyn has presented at least some evidence that Power-One knew of the existence and nature of these additional products as early as August 2006, months in advance of the expert witness, dispositive motion, and discovery deadlines. Power-One ultimately could have sought to amend their infringement contentions to add these products much sooner than it did, which was when it filed the present motions. Conforming the pleadings to add Astec and Emerson without giving them an opportunity to be served process, present defenses, and participate in discovery would result in undue prejudice to both of them, especially given the advanced stage of the litigation. While not dispositive in themselves, the presence of these factors is yet another consideration that weighs against granting Power-One's motions.

In summary, the Court finds that judicial economy would not be served by granting Power-One's motion to conform the pleadings to the evidence. Granting the motion would force the Court to either violate the due process rights of the entities sought to be added through amendment of the pleadings under Rule 15(b), or reopen the case from the beginning to accommodate the rights of the new parties one month before trial. Power-One's chief case supporting their proposed application of Rule 15(b) is entirely distinguishable when read in its proper context, and the Court cannot find any other relevant precedent that would support Power-One's proposed application of Rule 15(b) to amend the pleadings to add parties *before* a trial who have not consented or participated in any way. While Astec's declaratory judgment case against Power-One has been transferred to the Eastern District of Texas, that proceeding is still in its infancy. The Court understands Power-One's concerns about holding multiple trials involving these same patents, yet ultimately it is too late in the present proceeding to efficiently annex Astec's separate litigation and tackle all of these issues

in one trial currently scheduled one month away. The Court sees no reason why these related products cannot be addressed in the Astec litigation now pending before this Court. Given all of the legal and practical barriers, Power-One's motion to conform the pleadings to the evidence (Doc. No. 256) is DENIED.

*Motion for Sanctions*

Power-One also asks the Court sanction Artesyn for failing to comply with discovery orders. Through the requested sanctions, Power-One requests that four new products associated with Artesyn, Astec and Emerson be added to the present litigation, and that these products "stand or fall" with the DPL20C, the product at issue in the upcoming trial. In other words, Power-One is seeking a finding of the Court that these four new products are substantially similar to the DPL20C, and thus if the jury finds infringement of the DPL20C, then the DPL15E, Atlas, Venus and Sun Batoka should be held to have infringed Power-One's patents as well. The Court does not find such egregious misconduct on Artesyn's part to support such a request.

Federal Rule of Civil Procedure 37 authorizes sanctions for a party's failure to comply with discovery orders. *Juniper Networks, Inc. v. Toshiba America, Inc.*, 2007 WL 2021776 at *2 (E.D. Tex. 2007). Rule 37 sanctions must be applied diligently both "to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent." *Id.* at *3 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763 (1980)). However, any sanction issued under Rule 37(b)(2) must be both just and related to the particular claim which was at issue in the order to provide discovery. *Id.* (citing *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 413 (5th Cir. 2004)). "A severe sanction under Rule 37 is only to be employed where a lesser sanction would not substantially achieve the desired deterrent

effect." *Id.* Severe sanctions should be reserved for only the most egregious instances of bad faith or willful abuse of the judicial process. *Gonzalez v. Trinity Marine Group, Inc.*, 117 F.3d 894, 898 (5th Cir. 1997).

While it does appear from the evidence presented that Artesyn lagged in their production of documents throughout discovery, the Court does not find that Artesyn's actions rise to a level requiring such a harsh sanction as Power-One requests. Issuing a sanction whereby four products are judicially ordered to "stand or fall" with the Court's determination as to whether an entirely separate product infringes Power-One's patents would be a draconian measure reserved for only the most intentional and egregious of discovery violations, especially when even Power-One has asserted they know very little about these new products and whether they might infringe. *See* (Pl.'s Mot. Renew. Sanc. 15). Furthermore, the Court is not ready to grant Power-One's alternative requested relief: a bench trial on the four new products to take place immediately after the jury trial on the DPL20C. As stated, the Court is not ready to impose harsh sanctions on Artesyn for the alleged discovery abuses. Even were the Court willing to do so, granting Power-One's alternative request would likely require the Court to add Astec as a defendant, as these products are primarily associated with these defendants, and would require a reopening of the discovery process. In the interests of economy, fairness, and utility, the Court finds the best course of action is to proceed to trial on the DPL20C with Artesyn as the sole defendant.[7] Therefore, the Court DENIES Power-One's renewed motion for sanctions (Doc. No. 293).

---

[7]As noted, Astec originally brought suit in the Central District of California seeking declaratory relief, and that case has now been transferred to this Court. *See Astec America, Inc. v. Power-One, Inc.*, No. 6:07-cv-464. Again, the Court sees no reason that these products cannot be addressed in the Astec litigation; Power-One will get the chance to present its case against Astec in that proceeding.

*Motions for Expedited Consideration, Additional Discovery, and Leave to Supplement Infringement Contentions*

Power-One seeks leave to amend its infringement contentions to add the Atlas and Venus products, and Power-One also has moved for expedited consideration of its motion for additional discovery on the Atlas and Venus devices. Power-One has not accused these products in its infringement contentions, and ultimately, Power-One has not presented enough compelling evidence that these products are infringing and should be included in the present litigation. Power-One does not need evidence beyond all doubt of infringement, but there should be at least some solid justification for allowing new products into the litigation this close to trial. In light of the Court's denial of Power-One's other motions, the Court also DENIES Power-One's motion for leave to supplement its infringement contentions (Doc. No. 298), and DENIES Power-One's motions for additional discovery (Doc. No. 313) and motion for expedited consideration (Doc. No. 314) as moot.

## CONCLUSION

For the foregoing reasons, Power-One's Motion to Conform the Pleadings to the Evidence (Doc. No. 256); Renewed Motion for Sanctions or in the Alternative to Bifurcate Case Into Jury Trial and Bench Trial (Doc. No. 293); Motion For Additional Discovery on "Atlas" and "Venus" POL Products (Doc. No. 313); Motion for Expedited Consideration of its Motion for Additional Discovery on "Atlas" and "Venus" POL Products (Doc. No. 314); and Power-One's Motion for Leave to Supplement its Infringement Contentions (Doc. No. 298) are **DENIED**.

**So ORDERED and SIGNED this 11th day of October, 2007.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE