IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| POWER-ONE, INC.,<br><br>  Plaintiff,<br><br>v.<br><br>ARTESYN TECHNOLOGIES, INC.,<br><br>  Defendant. | CIVIL ACTION NO. 2:05-CV-463 (JDL)<br><br>**JURY TRIAL** |

**PLAINTIFF POWER-ONE, INC.'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW REGARDING DEFENDANT ARTESYN'S ALLEGATIONS
OF INEQUITABLE CONDUCT**

Alan D. Smith, BBO#629034
Steven R. Katz, BBO#642732
Whitney A. Fellberg, BBO#663599
Matthew J. Leary BBO#666074
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804
617-542-5070 (Telephone)
617-542-8906 (Facsimile)

E. Glenn Thames, Jr.
State Bar No. 00785097
Michael E. Jones
State Bar No. 10929400
POTTER MINTON
A Professional Corporation
500 Plaza Tower
110 North College Avenue
Tyler, TX 75702
(903) 597-8311 (Telephone)
(903) 593-0846 (Facsimile)


Counsel for Plaintiff
POWER-ONE, INC.

| | | |
|---|---|---:|
| I. | INTRODUCTION | 1 |
| II. | FINDINGS OF FACT | 1 |
| | A.   The Conception And Prosecution Of Power-One's Patents | 1 |
| | B.   Summit Application Note 25 | 2 |
| | C.   Power-One Submitted Art To The PTO That Was Cumulative Of Application Note 25 | 3 |
| | D.   Those Involved In The Prosecution Of The Asserted Patents Had No Deceptive Intent Toward The PTO With Regard To Summit Application Note 25 | 4 |
| | E.   The '169 Patent | 5 |
| III. | CONCLUSIONS OF LAW | 8 |
| | A.   Artesyn Did Not Carry Its Burden of Proof For Inequitable Conduct | 8 |
| | B.   Materiality | 10 |
| | C.   Knowledge | 11 |
| | D.   Failure to Disclose | 12 |
| | E.   Intent | 12 |
| | F.   Artesyn Is Not Entitled to a Finding of Inequitable Conduct | 13 |

I.  **INTRODUCTION**

1. Defendant and Counter-Plaintiff Artesyn Technologies, Inc. ("Artesyn") has alleged in its Answer and Counterclaims against Plaintiff Power-One, Inc. ("Power One") that United States Patent Nos. 7,000,125 (the "'125 patent") and 6,936,999 (the "'999 patent") are unenforceable by reason of inequitable conduct. (D/E 73; Joint Pretrial Order, at 3-4.)

2. At trial, the only references which Artesyn appeared to suggest were involved in its allegation of inequitable conduct were the Summit Application Note 25 (PTX477; PTX243) and U.S. Patent 6,396,169 (the "'169 patent") (DTX001).

II. **FINDINGS OF FACT**

   A.  **The Conception And Prosecution Of Power-One's Patents**

3. On August 23, 2001, Power-One's Mikhail Guz made a presentation to Cisco Systems which showed the conception of the invention of the two patents in suit. (PTX551; Nov. 8, 2007 (PM) Trial Tr. at 12:12-17:18.)

4. Power-One's Alain Chapuis began detailed development of the commercial embodiment of the patented inventions at least as early as October, 2001. (*See* Nov. 6, 2007 (PM) Trial Tr. at 130:1-22.)

5. From August 23, 2001, to at least the filing date of the patents in suit, Power-One and its inventors worked diligently on reducing the invention of the asserted patents to practice. (*See* Nov. 8, 2007 (PM) Trial Tr. at 33:19-34:1; Nov. 6, 2007 (PM) Trial Tr. at 131:17-133:24; 141:24-145:18; PTX610; PTX516; PTX574; PTX541.)

6. On December 21, 2002 Power-One filed United States Patent Application No. 10/326,222 ("the '125 application"). (PTX001.)

1

7.  On March 14, 2003 Power-One filed United States Patent Application No. 10/388,831 ("the '999 application"). (PTX002.)

8.  Brian Berliner, Esq., Alain Chapuis, and Mikhail Guz were involved in preparing and prosecuting the '125 patent. (PTX003.)

9.  Brian Berliner, Esq. and Alain Chapuis were involved in preparing and prosecuting the '999 patent. (PTX004.)

10. The United States Patent and Trademark Office (the "PTO") issued the '125 patent on February 14, 2006. (PTX001.)

11. The PTO issued the '999 patent on August 30, 2005. (PTX002.)

12. On August 7, 2007, the PTO corrected the inventorship of the '999 patent to include Mr. Guz as a co-inventor, finding that Mr. Guz's omission had been made without any deceptive intent. (PTX705; Nov. 8, 2007 (PM) Trial Tr. at 10:2-15.)

### B. Summit Application Note 25

13. Subsequent to the 2001 conception of the patented inventions, Power-One began speaking with Summit Microelectronics ("Summit") about using Summit's products as part of a bridge solution to help satisfy customer needs pending the commercial availability of solutions embodying Power-One's invention. (Nov. 8, 2007 (PM) Trial Tr. at 33:17-35:1.)

14. Mr. Guz worked with Summit employees to draft "Application Note 25" in order to cross-promote the availability of bridge solutions containing Summit's chips and Power-One's power supplies. (*See* Nov. 8, 2007 (PM) Trial Tr. at 89:4-90:21; PTX477; PTX243.)

15. Application Note 25 is dated June 7, 2002, more than nine months after Power-One's conception of the invention of the asserted patents. (PTX477 at 1; PTX243 at 1.)

16. Industry praise for Power-One's patented products described the benefits of Power-One's invention over the system described in Summit Application Note 25. (*See* Nov. 8, 2007 (PM) Trial Tr. at 51:12-52:2; PTX492.)

### C. Power-One Submitted Art To The PTO That Was Cumulative Of Application Note 25

17. Power-One disclosed in the '999 and '125 patents figures labeled "prior art" that are similar to the disclosure found in Application Note 25. These figures are Figure 1 of the '999 patent and Figure 2 of the '125 patent (collectively, the "Prior Art Figures"). (*See* PTX001; Nov. 8, 2007 (PM) Trial Tr. at 155:3-157:12; PTX002.)

18. Application Note 25 is cumulative of the Prior Art Figures disclosed in the '999 and '125 patents themselves. The Prior Art Figures "capture[] all of the major elements of the solutions shown in the Summit diagram." (Nov. 8, 2007 (PM) Trial Tr. at 157:13-16, 165:19-166:3.)

19. In fact, the Prior Art Figures actually disclose functionality that is even closer to Power-One's invention than Application Note 25. (Nov. 8, 2007 (PM) Trial Tr. at 157:2-160:3.) The prior art figures had "additional control lines . . . to increase functionality, or if you wish, complicate functionality of that solution to bring it closer to what [Power-One was] trying to patent compared to actually what Summit had." (*Id*.) It also had additional data buses, and shows the use of POLs in the Summit-like topology instead of quarter-bricks. Quarter-bricks were the only types of power-supplies actually disclosed in the Application Note. (*Id*.) Unlike the Application Note, which disclosed the use of no less than four controllers (one SMT4004, one SMH4804, and two SMP9210 DACPOTs), the Prior Art Figures in the patents disclosed a more sophisticated single power supply controller. (PTX001 at Figure 2; PTX002 at Figure 1; PTX477 at 1; PTX243 at 1; Nov. 14, 2007 (PM) Trial Tr. at 124:18-21 (confirmation by

3

Artesyn's expert that the Application Note disclosed only architectures requiring multiple controllers).)

> **D. Those Involved In The Prosecution Of The Asserted Patents Had No Deceptive Intent Toward The PTO With Regard To Summit Application Note 25**

20. There is no evidence that anyone made a decision to withhold Summit Application Note 25 from the PTO.

21. Mr. Guz, specifically, was not involved in any decisions concerning the submission of Application Note 25. (Nov. 8, 2007 (PM) Trial Tr. at 178:10-22.)

22. Mr. Guz had formed no intentions whatsoever, let alone deceptive intentions, concerning submitting Application Note 25. (Nov. 8, 2007 (PM) Trial Tr. at 178:23-179:7.) Therefore, there is no evidence that Mr. Guz failed to submit Application Note 25 with the intent to deceive the patent office.

23. There is no evidence that Mr. Berliner had ever seen Application Note 25, knew of it, considered it, or formed any intent whatsoever with respect to it. Therefore, there is no evidence that Mr. Berliner failed to submit Application Note 25 with the intent to deceive the patent office.

24. There is no evidence that Mr. Chapuis had ever seen Application Note 25, knew of it, considered it, or formed any intent whatsoever with respect to it. Therefore, there is no evidence that Mr. Chapuis failed to submit Application Note 25 with the intent to deceive the patent office.

### E. The '169 Patent

25. The '169 patent depicts a board-wide, multi-voltage power supply application that used bricks, not POLs. (*See* Nov. 7, 2007 (PM) Trial Tr. at 50:5-51:3.) The loads in the '169 "help themselves to these voltages as they need," meaning that the power busses of the '169 are available throughout the board. (*Id*.; Nov. 14, 2007 (PM) Trial Tr. at 140:3-141:4 (Mr. Stewart confirming that the '169 had three power busses that run throughout the board).)

26. Artesyn's Expert on the subject of patent invalidity, Mr. Stewart, admitted that the '169 did not anticipate the asserted claims of the '999 and '125 patents. Instead, Mr. Stewart testified that he believed that only the SCPI reference and the Summit Application Note 25 could anticipate. *(See* Nov. 14, 2007 (PM) Trial Tr. at 59:11-60:11).

27. The '169 patent does not disclose the smart POLs of the asserted patents. (*See* Nov. 7, 2007 (PM) Trial Tr. at 52:8-10.) The power supplies of the '169 patent are not "smart," are not POLs, and cannot determine sequencing on their own. (*Id*. at 51:25-52:7.) When asked how power-supplies that are feeding electric circuits through multiple voltage buses could be POLs, Mr. Stewart acknowledged that it was "a little difficult to understand why they need a voltage bus . . . ." (*See* Nov. 14, 2007 (PM) Trial Tr. at 141:18-142:12.) Mr. Stewart never testified that the '169 patent taught a system that was material to the asserted patents, and concluded glibly and without basis that "to me . . . all you've got to do is rub some things out, and that's a point-of-load system." (*Id*. at 143:5-7.)

28. The '169 patent fails to disclose all of the elements of the patented inventions. Mr. Stewart agreed that the '169 patent was not an anticipatory reference. (*See* Nov. 14, 2007 (PM) Trial Tr. at 59:11-60:11, 61:7-15, 145:5-13.(saying that he had "changed his mind" about

5

his earlier testimony and subsequently excluded the '169 patent from the references that he alleged were anticipatory))

29. The '169 actually teaches **away** from the architecture of the Power-One patents, teaching one of skill in the art **not** to use a communication bus to carry the power-good and enable information, and to instead use dedicated lines to communicate with the power system controller. (*See* DTX001 at 6:45-67; Nov. 14, 2007 (PM) Trial Tr. at 144:24-145:4 (Mr. Stewart conceding that the '169 actually teaches the use of dedicated lines); Nov. 7, 2007 (PM) Trial Tr. at 51:13-24.)

30. Examiner Adolf Berhane was a PTO official who examined and allowed both the '169 patent and Power-One's '999 patent. (*See* Nov. 14, 2007 (AM) Trial Tr. at 145:21-146:13.) Examiner Berhane had examined and allowed the '169 patent just months before the filing of the '125 patent. (*Compare* DTX001 to PTX001.)

31. Mr. Berliner neither knew nor even considered whether the '169 patent was material to the asserted patents. In fact, Mr. Berliner testified that he never made a judgment about whether the '169 patent was material to any of the asserted patents. (*See* Ex. A, designated depo. testimony of Brian Berliner; Nov. 15, 2007 (AM) Trial Tr. at 171:14-21 (entering Mr. Berliner's testimony).)

32. There is no evidence that Mr. Berliner had ever seen the '169 patent prior to this litigation.

33. There is no evidence that Mr. Berliner ever considered the question as to whether the '169 patent should or should not be submitted to the PTO in connection with any of the asserted patents. (*See* Ex. A, designated depo. testimony of Brian Berliner; Nov. 15, 2007 (AM) Trial Tr. at 171:14-21 (entering Mr. Berliner's testimony).)

34. There is no evidence of record that Mr. Berliner consciously withheld the '169 patent. (*See* Ex. A, designated depo. testimony of Brian Berliner; Nov. 15, 2007 (AM) Trial Tr. at 171:14-21 (entering Mr. Berliner's testimony).) Therefore, there is no evidence that Mr. Berliner failed to submit the '169 patent with intent to deceive the patent office.

35. There is no evidence that Mr. Chapuis had ever seen the '169 patent, knew of it, considered it, or formed any intent whatsoever with respect to it. Therefore, there is no evidence that Mr. Chapuis failed to submit the '169 patent with intent to deceive the patent office.

36. There is no evidence that Mr. Guz had ever seen the '169 patent, knew of it, considered it, or formed any intent whatsoever with respect to it. Therefore, there is no evidence that Mr. Guz failed to submit the '169 patent with intent to deceive the patent office.

### III. CONCLUSIONS OF LAW

#### A. Artesyn Did Not Carry Its Burden of Proof For Inequitable Conduct

37.     The modern definition of "inequitable conduct" is found in the Federal Circuit's opinion in *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995), as follows:

> Inequitable conduct includes affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive. (citation omitted.) One who alleges inequitable conduct arising from a failure to disclose prior art must offer clear and convincing proof of [1] the materiality of the prior art, [2] knowledge chargeable to the applicant of that prior art and of its materiality, and [3] the applicant's failure to disclose the prior art, coupled with an intent to mislead the PTO.

48 F.3d at 1178 (bracketed numbers added); *see also Honeywell Int'l. Inc. v. Universal Avionics Systems Corp.*, 488 F.3d 982, 999 (Fed. Cir. 2007).

38.     Under 37 C.F.R. § 1.56 "[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability…"  In general, the duty of candor extends to each inventor named in the application, each attorney or agent that prepares or prosecutes the application and "every other person who is substantially involved in the preparation or prosecution of the application.

39.     The *Molins* Court defined when information is "material" under the inequitable conduct determination, as follows:

> Information is "material" when there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent. (citation and footnote omitted.) If the information allegedly withheld is not as pertinent as that considered by the examiner, or is merely cumulative to that considered by the examiner, such information is not material.

48 F.3d at 1179.

Finally, the *Molins* Court emphasized (i) the "specific intent" requirement, and (ii) the "clear and convincing evidence" standard, required to prove inequitable conduct, as follows:

> Thus, the alleged conduct must not amount merely to the improper performance of, or omission of, an act one ought to have performed. Rather, clear and convincing evidence must prove that an applicant had the specific intent to accomplish an act that the applicant ought not to have performed, *viz.*, misleading or deceiving the PTO. In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known reference.

48 F.3d at 1181.

40. An applicant need not cite an otherwise material reference to the PTO if that reference is merely cumulative of other references already before the PTO or is less material than other references already before the examiner. *Baxter Int'l., Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1328 (Fed. Cir. 1998); *see Regents of University of California v. Eli Lilly and Co.*, 119 F.3d 1559 (Fed. Cir. 1997) (holding that cumulative information is not material).

41. A reference is cumulative if it "teaches no more than what a reasonable examiner would consider to be taught by the prior art already before the PTO." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1575 (Fed. Cir. 1997).

42. It is the defendant's burden to show, by clear and convincing evidence that a reference is not cumulative of art that is already before the examiner. "A reference that is simply cumulative to other references does not meet the threshold of materiality that is a predicate to a holding of inequitable conduct." *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1582 (Fed. Cir. 1991) (citation omitted) (emphasis added). Defendant cannot shift the burden of showing non-cumulativity to the patentee.

43. It is of no moment how and when a reference came to the attention of the PTO, as long as the reference was before the PTO during the pendency of the application. *Molins*, 48

9

F.3d at 1185; *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1582 (Fed. Cir. 1991). If the information was actually before the PTO while the application was pending, then that information cannot be deemed to have been "withheld" from the PTO. *Id.*

### B. Materiality

44. Defendant must show by clear and convincing evidence that the prior art references they rely upon are material. *Molins*, 48 F.3d at 1178-79.

45. A reference that is not prior art is not material for purposes of determining inequitable conduct. *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 940 (Fed. Cir. 1990) ("Since the Viatron 21 device was not prior art, it was not material to patentability.").

46. For the reasons discussed in the findings of fact, above, Artesyn did not carry its burden of proof on materiality. As an initial matter, Application Note 25 was published **after** the conception of the asserted patents, during Power-One's diligence toward its reduction to practice. The Application Note is not prior art to the asserted patents, and is thus not material prior art to them.

47. Moreover, the Prior Art Figures that Power-One provided to the PTO were cumulative of Application Note 25, and therefore the Application Note cannot meet the threshold of materiality required for a holding of inequitable conduct. The Application Note is less pertinent than the Prior Art Figures considered by the examiner, and would have taught much less than what a reasonable examiner would consider to be taught by the prior art already before the PTO.

48. The '169 patent is also not material to the asserted patents. The '169 patent does not disclose POLs, and actually teaches **away** from Power-One's invention. The examiner of the '999 patent was aware of the '169 patent, having reviewed and allowed the '169 patent just prior

10

to the filing of the asserted patents, yet did not cite this reference. Thus, the evidence shows that the '169 patent is not material to the patents-in-suit, and certainly is not sufficiently material to bear on the issue of inequitable conduct.

**C. Knowledge**

49. Defendant must show by clear and convincing evidence that those involved in prosecuting the asserted patents knew of the prior art or information allegedly withheld. *Molins*, 48 F.3d at 1178; *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987).

50. Defendant must also show by clear and convincing evidence that those involved in prosecuting the asserted patents actually knew of the materiality of the reference. *Nordberg, Inc. v. Telsmith, Inc.*, 82 F.3d 394, 397 (Fed. Cir. 1996)*; Molins*, 48 F.3d at 1178; *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.3d 867, 873 (Fed. Cir. 1988) (*en banc*); *FMC Corp.*, 835 F.2d at 1416.

51. For the reasons discussed in the findings of fact, above, Defendant did not carry its burden of proof on knowledge. There is no evidence of record that Mr. Guz or Mr. Chapuis knew of the '169 patent. There is no evidence of record that Mr. Berliner saw the '169 patent itself before this litigation.

52. Although Mr. Guz was aware of Application Note 25, there was no reason for him to believe it was material to the asserted patents. The Prior Art Figures already submitted in the patent applications were clearly cumulative of the Application Note. The Application Note is also not prior art. There is no evidence of record that Mr. Berliner or Mr. Chapuis knew of Application Note 25.

**D. Failure to Disclose**

53.     Defendant must prove, with clear and convincing evidence, that those involved with the prosecution failed to disclose the material information at issue. *Molin*, 48 F.3d at 1178.

54.     Defendant did not establish that the information in Summit Application Note 25 was not disclosed to the PTO.  As explained in the findings of fact above, all relevant information in Summit Application Note 25 was disclosed to the PTO in Figure 1 of the '999 patent and Figure 2 of the '125 patent.

**E. Intent**

55.     Defendant must prove, with clear and convincing evidence, that the inventors intended to deceive the PTO. *Molin*, 48 F.3d at 1178, 1181.

56.     "[M]ateriality does not presume intent, which is a separate and essential component of inequitable conduct." *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274 (Fed. Cir. 2001).

57.      "Intent to deceive can not be inferred solely from the fact that information was not disclosed." *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.*, 439 F.3d 1335, 1340 (Fed. Cir. 2006); *Atofina v. Great Lakes Chemical Corp.*, 441 F.3d 991, 1001 (Fed. Cir. 2006); *Kao Corp. v. Unilever United States, Inc.*, 441 F.3d 963, 972 (Fed. Cir. 2006).

58.     When determining whether intent has been shown, a court must weigh all evidence, including evidence of good faith. *Baxter Int'l., Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1330 (Fed. Cir. 1998).

59.     Absent a showing that an applicant intended to withhold information or at least considered withholding it, there is no support for finding an intent to mislead the PTO.  *See Pfizer Inc. v. Ranbaxy Labs Ltd.*, 405 F. Supp. 2d 495, 525 (D. Del. 2005) (no intent to deceive

when patentee likely did not consider the disputed reference) (overturned on other grounds); *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 2007 WL 2011279, at *17 (D. Mass. 2007) ("absent any showing that she intended the same information to be withheld on the '516 application, I cannot find an intent to mislead").

60. For the reasons discussed in the findings of fact, above, Defendant did not carry its burden of proof on intent. First and foremost, there is no evidence of record of any intent to deceive by anyone involved in the preparation or prosecution of the asserted patents. Nor is there any reason to infer such an intent. As for the '169 patent, it would be impossible for Mr. Guz or Mr. Chapuis to develop any intent toward a reference that neither knew existed. Further, there is no evidence of deceptive intent for Mr. Berliner, or any intent at all. There is no evidence that Mr. Berliner made a decision one way or the other concerning the '169 patent.

61. As for Application Note 25, the record shows that Mr. Guz was the **only** relevant person who was even **aware** of the reference. And Mr. Guz testified that he had not formed any intentions whatsoever, let alone deceptive intentions, about submitting the Application Note. Because Mr. Guz never considered submitting the Application Note, Artesyn cannot now claim that that he somehow intentionally withheld it.

**F. Artesyn Is Not Entitled to a Finding of Inequitable Conduct**

62. If a court finds that the threshold showings of materiality and intent are satisfied, it must then weigh these findings in light of all the evidence to evaluate whether the equities warrant a conclusion that inequitable conduct has occurred, that is, whether the applicant's conduct is so culpable that the patent should not be enforced. *Molins*, 43 F.3d at 1178. Only after materiality and intent are established "does the decisionmaker exercise its discretion to

13

decide whether, considering all the circumstances, inequitable conduct should be found." *Hupp v. Siroflex of America, Inc.*, 122 F.3d 1456, 1465 (Fed. Cir. 1997).

63. In order to find inequitable conduct the Court must have an "abiding conviction" that it is "highly probable" that the inventors made a deliberate decision to deceive the PTO. *See Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Baxter Int'l*, 149 F.3d at 1329.

64. Artesyn has failed to present clear and convincing evidence of the required threshold showings of materiality and intent. Artesyn also failed to present evidence that anyone involved in the prosecution of the asserted patents had knowledge that Application Note 25 or the '169 patent were material to the patentability of those patents.

65. Artesyn has failed to present any evidence to support a finding that Mr. Chapuis, Mr. Guz, or Mr. Berliner made a deliberate decision to deceive the PTO.

66. Artesyn has failed to prove inequitable conduct by clear and convincing evidence. Therefore, Artesyn is not entitled to a finding of inequitable conduct.

Dated:  December 7, 2007                               Respectfully submitted,

                                        By:   */s/ E. Glenn Thames, Jr.*
                                              E. Glenn Thames, Jr.
                                              State Bar No. 00785097
                                              glennthames@potterminton.com
                                              Michael E. Jones
                                              State Bar No. 10929400
                                              Mikejones@potterminton.com
                                              POTTER MINTON
                                              A Professional Corporation
                                              500 Plaza Tower
                                              110 North College Avenue
                                              Tyler, TX 75702
                                              (903) 597-8311 (Telephone)
                                              (903) 593-0846 (Facsimile)

                                              Alan D. Smith, BBO#629034
                                              Steven R. Katz, BBO#642732
                                              Whitney A. Fellberg, BBO#663599
                                              Matthew J. Leary BBO#666074
                                              FISH & RICHARDSON P.C.
                                              225 Franklin Street
                                              Boston, MA 02110-2804
                                              617-542-5070 (Telephone)
                                              617-542-8906 (Facsimile)

                                        Counsel for Plaintiff
                                        POWER-ONE, INC.

**CERTIFICATE OF SERVICE**

   The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 7, 2007 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by first class mail.

                                              */s/ E. Glenn Thames, Jr.*
                                              E. Glenn Thames, Jr.