**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **POWER-ONE, INC.** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 2:05-CV-463** |
| | § | |
| **ARTESYN TECHNOLOGIES, INC.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff Power-One, Inc.'s Motion for Entry of a Permanent Injunction

Against Artesyn Technologies, Inc., Astec America, Inc., and Emerson Electric Company (Doc. No.

393), and various responses, replies and sur-replies.   For the reasons that follow, Power-One's

motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Plaintiff Power-One, Inc. (hereinafter "Power-One") filed suit against Defendant Artesyn

Technologies, Inc. (hereinafter "Artesyn") alleging infringement of multiple Power-One patents.  On

November 15, 2007, a jury found Artesyn had infringed claims 1, 6, 15, 16, 17, 23, and 30 of U.S.

Patent No. 7,000,125 (hereinafter "the '125 patent").   The jury also upheld the validity of each of the

asserted claims of the '125 patent.

From the outset, Power-One focused its case primarily on obtaining a permanent injunction.

With the '125 patent found valid and infringed after jury trial, the parties have now had opportunity

to brief the Court on the injunction issue.

## ANALYSIS

"When considering whether to award permanent injunctive relief to a prevailing plaintiff in

a patent infringement, courts should apply the traditional four-factor test used by courts of equity."

*Commonwealth Scientific and Indus. Research Org. v. Buffalo Tech. Inc.*, 492 F. Supp. 2d 600, 602-

03 (E.D. Tex. 2007) (citing *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).  A prevailing plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc.*, 547 U.S. at 391.  "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and...such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *Id.* at 394.

In its motion seeking entry of a permanent injunction, Power-One presents compelling arguments that all of the *eBay* factors are satisfied, and that entry of a permanent injunction is appropriate.  In its response, Artesyn does not challenge Power-One's arguments that it has satisfied the *eBay* requirements for entry of a permanent injunction.  With apparently no opposition, and compelling evidence indicating Power-One has satisfied the *eBay* factors, the Court finds Power-One is entitled to a permanent injunction.[1]  The parties, however, do dispute which entities should be

---

[1]

In the present case, the infringing product was never mass-manufactured and sold, and Power-One therefore did not focus on damages.  Instead, Power-One focused the case on seeking injunctive relief.  The parties discussed the issue of an injunction extensively pre-trial, and seemed to agree that an injunction would ultimately follow if the jury found either of the patents infringed.  To any extent Artesyn's lack of opposition to entry of the injunction does not constitute agreement that an injunction is now warranted in this case, the Court finds Power-One satisfied the appropriate factors for entry of a permanent injunction.

As stated, Power-One's arguments for entry of an injunction are compelling.  Regarding the first two factors, Power-One presented testimony that Artesyn's presentation of its DPL20C froze the market, and effectively prevented Power-One from capitalizing on its patented invention.  *See TiVo Inc. v. EchoStar Commc'n Corp.*, 446 F. Supp. 2d 664, 669-70 (E.D. Tex. 2006) (noting that "[l]oss of market share in [a] nascent market is a key consideration in finding that Plaintiff suffers irreparable harm").  Power-One also presented evidence that the companies are direct competitors, and that Power-One only recently created the smart POL market, making the harm particularly acute.  *See Brooktrout, Inc. v. Eicon Networks Corp.*, 2007 WL 1730112, at *1 (E.D. Tex. 2007).  It would be virtually impossible to calculate Power-One's future loss with any reasonable precision, and therefore compensatory damages would be unsuitable for amending the ongoing injury.  *Brooktrout, Inc.*, 2007 WL 1730112, at *2.  The evidence Power-One presented

named in the injunction, and the scope of the products covered in the injunction.

## I.      Parties to be Enjoined

In its proposed injunction, Power-One names not only Artesyn, but also Astec America, Inc. (hereinafter "Astec") and Emerson Electric Co. (hereinafter "Emerson").  Though neither Astec nor Emerson were parties to the litigation, Power-One argues that Astec and Emerson "are the real parties in interest here."  Pl.'s Mot. For Entry of Permanent Inj. at 22.  Power-One bases this assertion on a number of facts, but most importantly on the fact that during the course of the litigation Emerson purchased Artesyn and transferred Artesyn's employees into Astec, another of Emerson's subsidiary companies.  Power-One argues that Emerson and Astec are therefore the successors in interest to Artesyn, and should be named specifically in the injunction.[2]  Power-One also argues that comments made by Artesyn and Astec's counsel during the course of the litigation amounted to consent for Emerson and Astec to be named in the injunction, and also that Emerson and Astec controlled the litigation, and were adequately represented by Artesyn throughout the litigation.

---

effectively satisfies the first two prongs of the *eBay* test.  *See Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 24 (5th Cir. 1992) (noting that "[b]y definition, 'irreparable injury' is that for which compensatory damages are unsuitable"); *Brooktrout, Inc.*, 2007 WL 1730112, at *2 ("The inability to calculate the plaintiff's future loss with reasonable precision makes legal remedies inadequate").

Regarding the third prong of the *eBay* test, Power-One presented evidence that it had spent more than $20 million on its patented invention and product over many years, while Artesyn had invested less than $200,000 and had not manufactured the DPL20C in any significant quantities yet.  If Power-One is not granted an injunction, not only will it lose any potential of recouping its significant investment, it would also lose its right to exclude others from infringing its intellectual property.  While Artesyn will suffer a minor hardship if enjoined, the harm can be ameliorated by narrowly tailoring the injunction.  *Brooktrout, Inc.*, 2007 WL 1730112, at *2.  On the whole, Power-One would suffer a much greater hardship if an injunction was denied than Artesyn would suffer if enjoined.

Finally, the public interest would be served by granting an injunction, as it would be protecting the patent rights at issue.  *Commonwealth Sci. and Indus. Research Org. v. Buffalo Tech. Inc.*, 492 F. Supp. 2d 600, 607 (E.D. Tex. 2007).

[2]

Power-One also argues that justice requires Emerson and Astec to be named because Artesyn is at present allegedly nothing more than a shell organization within Emerson's business holdings.

While a district court has broad discretion when issuing an injunction, a court may not enjoin a non-party that has not appeared before it to have its rights legally adjudicated.  *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1351 (Fed. Cir. 1998) (citing *Chase Nat'l Bank v. City of Norwalk*, 291 U.S. 431, 436-37 (1934)).  This rule is rooted in the common law.  As Judge Learned Hand explained:

> "[N]o court can make a decree which will bind any one but a party; a court of equity is as much so limited as a court of law; it cannot lawfully enjoin the world at large, no matter how broadly it words its decree.  If is assumes to do so, the decree is *pro tanto brutum fulmen*, and the persons enjoined are free to ignore it. [A district court] is not vested with sovereign powers to declare conduct unlawful; its jurisdiction is limited to those over whom it gets personal service, and who therefore can have their day in court."

*Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832-33 (2d Cir. 1930).  Federal Rule of Civil Procedure 65(d), which codified Judge Hand's opinion in *Alemite*, also provides that an injunction "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."  *Additive Controls & Measurements Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1395 (Fed. Cir. 1996) (citing Fed. R. Civ. P. 65(d)).

Though a court generally may not enjoin a non-party that has not appeared to have its rights adjudicated, "[h]aving a relationship to an enjoined party of the sort set forth in Rule 65(d) exposes a non-party to contempt for assisting the party to violate the injunction."  *Additive Controls & Measurement Sys., Inc.*, 96 F.3d at 1395-96.  However, as both the Supreme Court and Federal Circuit have stated, "the [ultimate] effect of an injunction on non-parties 'depends on an appraisal of [their] relations and behavior [with the enjoined party,] and not upon mere construction of the

4

terms of the order.'" *Additive Controls & Measurement Sys., Inc.*, 154, F.3d at 1351 (citing *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945)).  When crafting the injunction, the Court must remain mindful of the long-standing tradition, rooted in the common law and codified in the Federal Rules of Civil Procedure, that non-parties generally must not be named in an injunction without having their own rights first adjudicated.  *Additive Controls& Measurement Sys., Inc.*, 96 F.3d at 1395 (noting that "[c]ourts [must] carefully [distinguish] between entering an injunction against a non-party, which is forbidden, and holding a non-party in contempt for aiding and abetting in the violation of an injunction that has been entered against a party, which is permitted").

Given the thorough guidance from the Federal Circuit on this matter, the Court finds it would be improper to independently name Astec and Emerson in the injunction.  Neither Astec nor Emerson appeared before the Court, and neither entity has had their rights, obligations, or liabilities adjudicated as yet.[3]  However, Power-One's concern that Artesyn as an independent entity may not exist outside of its connection to Astec and Emerson is noted by the Court, and will be addressed in proper fashion in the entered injunction.  As the Supreme Court and Federal Circuit have noted, injunctions may survive the dissolution of a corporation at which the injunction is directed, and will continue to bind any successors in interest to the original defendant.  *Additive Controls & Measurement Sys., Inc.*, 154 F.3d at 1351.  Indeed, such a rule is necessary to prevent an enjoined defendant, from "nullify[ing] a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *Additive Controls & Measurement Sys., Inc.*, 154 F.3d at 1352 (quoting *Regal Knitwear Co.*, 324 U.S. at 14).  The Court's injunction will

---

[3]

There is separate pending litigation between Astec and Power-One before this Court.  *See Astec America Inc. v. Power-One, Inc.*, 6:07-cv-464 (E.D. Tex. 2007).

include the language "successors in interest" and "in active concert," and therefore, Astec and

Emerson will be subject to contempt proceedings to the extent they are in fact the "successors in

interest" to Artesyn, or to the extent they are working "in active concert" with Artesyn to violate the

terms of the injunction.[4]

## II.    Scope of Injunction

Power-One also argues that the injunction should include not only the DPL20C, the accused

product in the litigation between the parties, but also "POLs which communicate programming and

monitoring information over a serial bus." Pl.'s Mot. For Entry of Permanent Inj. at 16.  Power-One

argues that enjoining only the DPL20C is insufficient given Emerson's alleged demonstrated

"willingness to simply re-label their infringing products in an attempt to evade Power-One's patents.

*Id.* at 16-17.

In order to comply with Rule 65(d), the Federal Circuit has articulated that the only acts an

injunction may prohibit are infringement of the patent by the adjudicated devices, and infringement

by devices not more than colorably different from the adjudicated devices.[5]  *Int'l Rectifier Corp. v.

IXYS Corp.*, 383 F.3d 1312, 1316 (Fed. Cir. 2004) (noting that injunction scope must be limited

because "contempt proceedings...are available only with respect to devices previously admitted or

---

4

Artesyn does not dispute that successors and interest and assigns should be bound by an injunction, nor does Artesyn dispute that Astec and Emerson would be bound by the injunction to the extent their actions fall within the scope of the Federal Rules and the injunction itself.  *See* Def.'s Sur-reply in Opp'n to Pl.'s Mot. For Permanent Inj. at 4-5.

5

The Federal Circuit explained the "no more than colorably different" standard in *KSM Fastening Sys., Inc. v. H.A. Jones Co.*, 776 F.2d 1522 (Fed. Cir. 1985).  Where the alteration in the device is "merely colorable" and obviously made for the purpose of eluding the decruee, the courts will try the question of infringement by the new device in proceedings for contempt for violation of the injunction.  *Id.* at 1531.  However, where infringement of by the new device is not clear on the face of the matter, and there are substantial issues for the determination of the Court, the plaintiff may not have them determined in contempt proceedings, but must bring a supplemental bill for an injunction covering the new device, or institute a wholly new suit for such an injunction.  *Id.*

adjudged to infringe, and to other devices which are no more than colorably different therefrom and which clearly are infringements of the patent"). Any injunction must be narrowly tailored to ensure that "[the] injunction [does not] impose unnecessary restraints on lawful activity." *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002).

The Federal Circuit has consistently stricken injunctions that attempt to expand beyond some variation of the "adjudicated products and colorable variations thereof" language to cover other products and activities that may not have been adjudicated. *See Forest Labs., Inc. v. Ivax Pharm., Inc.*, 501 F.3d 1263, 1271-72 (Fed. Cir. 2007) (striking the language "any products that infringe the '712 patent'" from the injunction after reiterating previous Federal Circuit holdings limited the scope of injunctive relief to "infringement of the patent by the adjudicated [products] and infringing by [products] not more than colorably different from the adjudicated [products]"); *Int'l Rectifier Corp.*, 383 F.3d at 1317 (vacating injunction which went beyond "prohibit[ing] only those acts sought to be restrained, which in this case are infringement of the patent by the devices adjudged to infringe and infringement by devices no more than colorably different therefrom"); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 986 F.2d 476, 479-80 (Fed. Cir. 1993) (finding injunction violated Rule 65(d) because it did not use specific terms or describe in reasonable detail the acts sought to be restrained, and because the injunction "[did] not limit its prohibition to the manufacture, use, or sale of the specific infringing device, or to infringing devices no more than colorably different from the infringing device"). As a result, district courts issuing injunctions readily limit the scope of the injunction to the infringing product, and adopt the "colorable variations" language to describe the other products beyond the infringing product itself that fall within the scope of the injunction. *See Black & Decker Inc. v. Robert Bosch Tool Corp.*, 2006 WL 3446144, at *5 (N.D. Ill. 2006)

7

(adopting the language "from making, using, selling, offering or importing [the product] or any merely colorable imitations thereof" in permanent injunction order); *Advanced Med. Optics, Inc. v. Alcon Labs., Inc.*, 2005 WL 3454283, at *10 (D. Del. 2005) (instructing that "[t]he injunction will cover not only each of the devices found to infringe [the patents], but also others 'not more than colorably different' from those devices").

In its proposed injunction, Power-One includes language enjoining not only the DPL20C, the infringing product in this case, but also "other POL regulator(s) adapted to communicate programming and monitoring information via a serial data bus and adapted to determine power conversion parameters responsive to the programming information and to generate monitoring information responsive to the POL's operational characteristics." Power-One argues such language is necessary because "naming 'the DPL20C' and 'colorable variations thereof' is not specific enough." However, as exhibited by the discussion of the law on this matter above, Power-One's proposed injunction is contrary to the Federal Circuit's interpretation of Rule 65(d). According to precedent, the injunction must be limited in scope to the adjudicated products and acts causing infringement. Power-One's proposal would ultimately include a wide variety of potential products that have not been adjudicated (the "other POL regulator(s)"), as well as acts that actually may be lawful.[6] The Federal Circuit has cautioned against including products in an injunction that a patent may cover but that have not been adjudicated and found to infringe. *See Forest Labs., Inc.*, 501 F.3d at 1271. Therefore, the Court finds Power-One's inclusion of the "other POL regulator(s)" language

---

[6] Power-One attempts to justify their inclusion of the "other POL regulator" language as being founded in the claim language of the '125 patent, which the jury found infringed. However, Power-One's proposal does not include *all* of the limitations, and therefore is overbroad even if the Court could adopt Power-One's proposed language. Including such language would improperly restrict lawful activity, and also improperly open contempt proceedings beyond just the "colorable variations" of the infringing product to other parties and products.

and other references to chopped sections of the patent's claim language to be overbroad and contrary to the restrictions of Rule 65(d).

Pursuant to Federal Circuit precedent, the scope of the injunction will cover infringement of the patent by the adjudicated product, the DPL20C, and colorable variations thereof.  The permanent injunction will be substantially similar (but not identical) to Artesyn's proposed injunction,[7] and will reflect all of the issues discussed herein.

## CONCLUSION

For reasons cited herein, Power-One's motion for entry of a permanent injunction (Doc. No. 393) is **GRANTED IN PART** and **DENIED IN PART**.  The Court will issue a permanent injunction reflecting the findings in this order forthwith.

**So ORDERED and SIGNED this 11th day of April, 2008.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

---

[7]

*See* Def.'s Opp'n to Pl.'s Mot. For Entry of Permanent Inj. at 11 n.2.

9